UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

STEVEN BARRERE,

               Plaintiff,

      v.

COUNTY OF NASSAU, NASSAU
COUNTY CORRECTIONAL FACILITY,
*a/k/a Nassau County Sherriff's Department*,
CORRECTION OFFICER MANGANARA,
CORPORAL CORTOLO,
ARMOR CORRECTIONAL HEALTH
SERVICES, INC.,
"JOHN AND JANE DOES 1-10, *et al.*",

               Defendants.

**<u>MEMORANDUM & ORDER</u>**
18-CV-03562 (HG) (VMS)

**HECTOR GONZALEZ**, United States District Judge:

      Defendants County of Nassau, Nassau County Correctional Facility, a/k/a Nassau County

Sherriff's Department, Correction Officer Manganaro (improperly named as Manganara), and

Corporal Curatolo (improperly named as Cortolo) ("County Defendants") have moved for partial

summary judgment on all counts of Plaintiff's complaint except the claims predicated on

allegations that Corporal Curatolo and C.O. Manganaro ("Officer Defendants") physically

assaulted Plaintiff on separate occasions.  ECF No. 91 (Motion for Partial Summary Judgment);

ECF No. 91-14 at 1.  Also pending before the Court is Defendant Armor Correctional Health

Services, Inc.'s reply filed in support of summary judgment, which seeks summary judgment on

all claims against it.  ECF No. 94 (Defendant Armor's Reply in Support of Summary Judgment).

For the reasons stated herein, both the County Defendants' motion for partial summary judgment

and Defendant Armor's motion for summary judgment are GRANTED in full.

**PROCEDURAL HISTORY**

On June 19, 2018, Plaintiff commenced this action against the following Defendants: (a) Nassau County; (b) Nassau County Correctional Facility, also known as the Nassau County Sherriff's Department; (c) Correction Officer Manganaro; (d) Corporal Curatolo; (e) Nassau University Medical Center ("NUMC"), also known as Nassau Healthcare Corporation; (f) Armor Correctional Health Services, Inc.; and (g) "John and Jane Does 1-10, *et al*." ECF No. 1 (Complaint). The Complaint alleges violations of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983. *Id.* at 18–34. The Complaint further alleges *Monell* liability arising out of the purported constitutional violations. *Id.* at 34–45. Finally, the Complaint alleges state common law claims for negligence, medical malpractice, and intentional infliction of emotional distress. *Id.* at 45–52. Plaintiff seeks compensatory damages against all Defendants, *id.* at 1, and punitive damages against the Officer Defendants. *Id.* at 53–54.

Defendants answered the Complaint in July and August 2018. ECF Nos. 7, 11, 13, 16 (Defendants' Answers). The Court certified the close of discovery on September 29, 2022. *See* September 29, 2022, Text Order. All Defendants filed their pre-motion conference letters in support of their motions for summary judgment on September 30, 2022. ECF Nos. 59, 60, 61 (Defendants' Pre-Motion Conference Letters in Support of Summary Judgment).

Before the summary judgment motions were fully briefed, counsel for Defendant Armor withdrew from the case. *See* November 9, 2022, Text Order. The Court warned Defendant Armor that the need to retain new counsel could not form the basis of delaying filing its summary judgment motion. *Id.* Defendant Armor did not obtain counsel before opening papers were due, and therefore missed the deadline to file its motion for summary judgment. *See* ECF No. 84 (Defendant Armor's Letter Requesting Joinder in County Defendants' Motion).

2

Nevertheless, the Court permitted Defendant Armor to join the County Defendants' motion for summary judgment, but ordered Defendant Armor to file a separate reply.  April 25, 2023, Text Order.  The motions for summary judgment were fully briefed on June 29, 2023.  ECF Nos. 91, 92, 93, 94.  On that same day, Plaintiff and Defendant NUMC entered into a stipulation of dismissal, which the Court so-ordered.  ECF No. 90 (Stipulation of Dismissal); June 29, 2023, Text Order.  The County Defendants, Defendant Armor, and Defendants John and Jane Does 1-10, *et al*., remained.

The County Defendants are seeking partial summary judgment on all claims except upon the allegations that Corporal Curatolo and C.O. Manganaro physically assaulted Plaintiff on separate occasions.  Consequently, the Court will not consider those claims in this decision.

In Plaintiff's Opposition to the motion for summary judgment, he abandons his claims against Defendant Nassau County Correctional Facility, a/k/a Nassau County Sherriff's Department.  *See* ECF No. 92 at 1 (Plaintiff's Opposition to County Defendants' Motion for Summary Judgment).  Plaintiff also abandons his state common law claims for negligence and intentional inflection of emotional distress.  ECF No. 92 at 24.  Therefore, the Court will review the pending motions as they relate to Plaintiff's claims of violations of his constitutional rights pursuant to 42 U.S.C. § 1983 and *Monell* liability against the remaining County Defendants: (a) Nassau County, (b) C.O. Manganaro, and (c) Corporal Curatolo, and against Defendant Armor.

# FACTUAL BACKGROUND

## I.      2016 Pre-Trial Detention

### A.      Initial Intake & February 4, 2016, Altercation

In 2011, Plaintiff suffered a traumatic brain injury from a car accident.  ECF No. 91-7 at

10:7–11:4 (Plaintiff Dep. Tr.); ECF No. 92-3 at 69:12–18 (Plaintiff Dep. Tr.).  As a result of that

car accident, Plaintiff was charged with vehicular manslaughter because it was alleged that he

was driving while intoxicated.  ECF No. 91-7 at 10:7–11:4.  Plaintiff was held as a pre-trial

detainee in the Nassau County Correctional Center from February 2, 2016, to November 30,

2016.  ECF No. 93-3 ¶ 2 (County Defs. 56.1 Resp.); ECF No. 94-1 ¶ 2 (Def. Armor 56.1 Resp.).

Upon intake, Plaintiff underwent a mental health screening.  ECF No. 92-1 ¶ 8 (Pl. 56.1 Resp.);

ECF No. 92-9 (February 3, 2016, Armor Health Assessment Form).  The only allergy[1] listed on

Plaintiff's Health Assessment form is an allergy to non-steroidal anti-inflammatory drugs

("NSAIDS").  ECF No. 92-9 at 2.[2]

On February 4, 2016, Plaintiff had a mental health evaluation in which it was noted that

he seemed "fidgety, seemingly paranoid, and hostile."  ECF No. 92-1 ¶ 11.  At the end of the

evaluation, Plaintiff refused to sign "anything that can screw [him] up!"  *Id.* at ¶ 12.  Plaintiff

refused to sign his mental health form.  ECF No. 75 at 108 (Plaintiff's Inmate Records).  Plaintiff

continued to see mental health personnel as a pre-trial detainee in 2016.  *See, e.g.*, ECF No. 75 at

58–68; ECF No. 92-1 ¶¶ 54, 74, 90, 104, 106.

---

[1]     Although Plaintiff claims he also has an allergy to deli meats, this allergy was not listed
on any other forms where Plaintiff informed medical personnel of his allergies in 2016.  *See,
e.g.*, ECF No. 75 at 150, 178.  Plaintiff also subsequently filed a sick call grievance complaining
that he did not receive a turkey sandwich as ordered by the doctor.  *Id.* at 200; ECF No. 92-1 ¶
109.

[2]     Unless otherwise noted, the Court cites to the page numbers in the exhibits filed in
support of the parties' papers that are assigned by the Electronic Case Files ("ECF") system.

Also on February 4, 2016, Plaintiff appeared in County Court.  ECF No. 75 at 8.  While Plaintiff waited in a holding cell, he fought with another inmate.  ECF No. 91-7 at 86:6–89:25. As a result of the fight, Plaintiff pled guilty to a violation of Inmate Handbook Rule 31, and was separated from the general population from February 4, 2016, to February 19, 2016.  ECF No. 92-1 ¶¶ 19, 23.  This was one of the two instances in 2016 in which Plaintiff was subject to a so-called "keep lock" and separated from general population.  ECF No. 75 at 2; ECF No. 92-1 ¶ 14.

### B.  July 2016 Altercation

On July 20, 2016, Plaintiff was involved in an altercation with three other inmates.  ECF No. 75 at 11; ECF No. 92-1 ¶ 136.  During the altercation, Plaintiff received a head wound.  ECF No. 92-1 ¶ 138; ECF No. 93-3 ¶ 22; ECF No. 94-1 ¶ 22.  After the altercation, Plaintiff remained in his cell for approximately thirty minutes, but was treated for the wound the same day.  ECF No. 75 at 101; ECF No. 92-1 ¶ 138; ECF No. 93-3 ¶ 22; ECF No. 94-1 ¶ 22.  He received nine staples to close the wound, which were removed on July 27, 2016.  ECF No. 92-1 at ¶¶ 138–39. As a result of the altercation, Plaintiff was subject to "keep lock" for a second time.  ECF No. 75 at 2; ECF No. 91-9 at 67:10–24 (Marrone Dep. Tr.).  A disciplinary proceeding regarding the altercation took place on August 5, 2016.  ECF No. 75 at 12.  The disposition record of the disciplinary proceeding indicates Plaintiff "was not the aggressor, did not engage in fighting and may have been assaulted . . . *no sanctions.*"  *Id.*

### C.  Plaintiff's Grievances & Medical Care

Plaintiff filed numerous grievances while he was a pre-trial detainee in 2016.  ECF No. 93-3 ¶ 6; ECF No. 94-1 ¶ 6.  If a grievance involved a sick call request, the grievance unit would forward the request to the medical unit and the medical staff would respond.  ECF No. 92-1 ¶ 36. During his time as a pre-trial detainee, Plaintiff filed numerous sick call requests, which

5

sometimes required him to be seen by medical personnel.  *See, e.g.*, ECF No. 75 at 76–96, 111–113; ECF No. 92-1 ¶¶ 43–44, 56–58, 86–88.  For example, on March 16, 2016, Plaintiff filed a sick call request in relation to a dental filling.  ECF No. 92-1 ¶ 65.  On March 24, 2016, Plaintiff saw a dentist regarding this issue.  *Id.* ¶ 71.  Other sick call requests related to Plaintiff's diet, including that he medically needed "Boost" or "Ensure" or that he was not provided a turkey sandwich as ordered by the doctor.  *See, e.g.*, *id.* ¶¶ 48–49, 61, 66, 84, 100, 109.  Plaintiff also requested the nutritional facts for peanut butter, which he was provided.  *Id.* ¶¶ 131–32.

Separately, on April 3, 2016, Plaintiff fainted, and was subsequently taken to NUMC to be evaluated.  ECF No. 75 at 148–51, 153–55; ECF No. 92-1 ¶ 75.  The evaluation revealed that Plaintiff had suffered an episode of near syncope caused by bradycardia[3] and dehydration.  ECF No. 92-1 ¶ 76.  Plaintiff was prescribed medication and a Zio patch monitor.  ECF No. 75 at 176; ECF No. 92-1 ¶ 77.  About two weeks later, after Plaintiff complained of soreness and requested to see a dietician, *see* ECF No. 75 at 81, Plaintiff was prescribed a special diet requiring the addition of salt in all meals and a bedtime sandwich or snack, *see id.* at 136.  From the end of April 2016 to the beginning of May 2016, Plaintiff made numerous sick-call-related requests and was seen by medical staff.  ECF No. 75 at 193–198; ECF No. 92-1 ¶ 85–88, 97–98, 104, 108, 113–14.  His request for specialty service/consultation to see a cardiologist was approved.  ECF No. 92-1 ¶ 85.  He was additionally monitored in the infirmary.  *Id.* ¶ 89.  On April 27 and April 29, 2016, Plaintiff requested to be placed back into general population, but the medical staff kept him in the infirmary because they wanted to monitor his condition.  *Id.* ¶¶ 89, 94; ECF No. 91-12 at 30–31 (Plaintiff's Grievance Records).

---

[3]     Syncope is also known as "fainting or 'passing out.'" AM. HEART ASS'N, *Syncope (Fainting)*, https://perma.cc/9XR4-82JU (last visited March 24, 2024).  Bradycardia is defined as a slow heart rate.  AM. HEART ASS'N, *Bradycardia: Slow Heart Rate*, https://perma.cc/5NZM-S3CF (last visited March 24, 2024) .

Shortly after his discharge from NUMC, Plaintiff filed a drug exception request regarding his medication.  ECF No. 75 at 134; ECF No. 92-1 ¶ 79.  On other occasions, Plaintiff would refuse treatment as recommended by medical personnel and would refuse taking his prescribed medication, including the medication prescribed to him after visiting NUMC.  ECF No. 75 at 139–47; ECF No. 92-1 ¶¶ 47, 95–96, 101, 103, 105, 107, 108, 110–14.  Plaintiff's medications were administered when he requested them.  *See, e.g.*, ECF No. 92-1 ¶ 97.

On May 16, 2016, Plaintiff filed a grievance related to being denied medical attention. ECF No. 91-12 at 22.  The Grievance Form from that date indicates Plaintiff had no medical complaints.  *Id.*  The form also indicates that Plaintiff was "encouraged to sign up for sick call" if "he fe[lt] his condition ha[d] changed."  *Id.*  Nevertheless, Plaintiff continued to refuse his medication and other treatment from medical personnel.  ECF No. 92-1 ¶¶ 118, 121–28, 133.  On one occasion on November 28, 2016, Plaintiff visited the clinic and claimed, "I don't want to be seen I just want to refuse," and then refused to sign the Refusal of Treatment form.  ECF No. 92-1 ¶ 135.

Plaintiff further filed non-sick call related grievances, such as grievances for being denied access to the law library and grievances related to a broken clothes dryer.  ECF No. 92-1 ¶¶ 59, 63.  Those grievances were reviewed by the grievance unit, and sometimes actions would be taken, such as granting Plaintiff access to the law library and providing Plaintiff with laundry services.  ECF No. 91-1 ¶¶ 60, 64; ECF No. 91-12 at 35, 37, 45.[4]

---

[4]     Plaintiff also references alleged harassment and physical assaults by Defendants Curatolo and Manganaro, which the County Defendants and Defendant Armor deny.  ECF No. 93-3 ¶ 16, 47; ECF No. 94-1 ¶ 16, 47.  Because the Court is not being asked to evaluate the allegations of physical assault, these disputes are not relevant to the analysis of the instant motion.

## II.      2018 Incarceration[5]

Plaintiff was again detained post-conviction from February 1, 2018, to March 16, 2018.

ECF No. 75 at 249–50.  Upon intake, Plaintiff went through another health screening, and his

health assessment form indicated an allergy to NSAIDS.  *Id.* at 203.  The health assessment form

additionally noted that Plaintiff had no reported medications or mental health problems.  *Id.* at

202–03.  Initially, Plaintiff refused medical and mental health treatment.  *Id.* at 220, 245, 248.

Then, on February 10, and February 12, 2018, Plaintiff filed sick call requests to see a doctor.

ECF No. 92-1 ¶¶ 152–54.  However, Plaintiff still refused to see mental health personnel.  ECF

No. 75 at 226, 242.  On February 16, 2018, Plaintiff was seen by the medical unit as a result of

his sick call requests.  *Id.* at 213, 221.  Plaintiff was prescribed a diet that included high calories

and protein, including three snacks a day.  *Id.*  Plaintiff was also restricted from eating cold cuts.

*Id.* at 221.  Plaintiff noted that he did not like to take pills, so the medical staff recommended an

increase in fluids and high calorie diet to alleviate his medical complaints.  *Id.* at 230.  The

medical staff also noted an allergy to bologna and that Plaintiff did not like cold cuts.  *Id.*

On February 20, and February 21, 2018, Plaintiff filed sick call requests asking to see a

doctor and a dietician.  ECF No. 92-1 ¶¶ 161–62.  Plaintiff was seen by the medical unit on

February 21, and February 23, 2018.  ECF No. 75 at 211, 230.  The medical staff noted

Plaintiff's request of no fish in his diet and he was prescribed Tums and suggested a follow up

with a dietician.  *Id.*  The nurse's medication notes from February 24, 2018, indicated that

---

[5]      Defendant Armor notes that the allegations related to Plaintiff's incarceration in 2018 do
not relate to Armor as Armor's contract with Nassau County ended in August of 2017.  ECF No.
94 at 6.  Additionally, Plaintiff did not recall interacting with Corporal Curatolo or C.O.
Manganaro during his 2018 incarceration.  ECF No. 92-1 ¶ 177.  In fact, Plaintiff did not recall
which correction officers he interacted with at all during his 2018 incarceration.  *Id.* ¶ 178.  The
Court therefore does not analyze the claims arising from Plaintiff's 2018 incarceration as they
pertain to these Defendants.

Plaintiff refused the Tums.  *Id.* at 239.  On February 26, 2018, Plaintiff had a dietary consult, where it was noted that Plaintiff had an allergy to cold cuts and that he was receiving a high calorie/high protein tray.  *Id.* at 229.

Throughout the remainder of Plaintiff's time as an inmate, he continued to claim he did not need mental health treatment.  *See, e.g.*, ECF No. 75 at 241.  Nevertheless, Plaintiff maintained his requests to see medical staff due to his weight fluctuation, pain related to his osteoarthritis, and gastrointestinal issues.  ECF No. 92-1 ¶ 169–71, 173, 176.  Despite these requests, Plaintiff on occasion refused treatment and the medications he was prescribed.  *Id.* at 172; ECF No. 75 at 229, 237.  The medical staff attended to Plaintiff when he came to the medical unit.  ECF No. 75 at 229, 235.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In other words, a court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).[6]  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly &*

---

[6]    Unless noted, case law quotations in this Order accept all alterations and omit internal quotation marks, citations, and footnotes.

*Co.*, 654 F.3d 347, 358 (2d Cir. 2011).  "The mere existence of a scintilla of evidence" in support of the non-movant will not alone defeat a summary judgment motion.  *Anderson*, 477 U.S. at 252.

In deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party.  *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  Although "courts must refrain from assessing competing evidence in the summary judgment record and avoid making credibility judgments," the non-moving party must defeat summary judgment by putting forth "evidence on which the jury could *reasonably* find for the non-moving party."  *Saeli v. Chautauqua Cnty.*, 36 F.4th 445, 456 (2d Cir. 2022) (emphasis in original) (affirming summary judgment dismissing complaint).  "[R]eliance upon conclusory statements or mere allegations is not sufficient to defeat a summary judgment motion"; rather, the nonmoving party must "go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002).

## DISCUSSION

### I.    Plaintiff's Section 1983 Claims

Plaintiff's Section 1983 claims are based on alleged violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments.  ECF No. 1 at 18–34.  "It is fundamental . . . that [Section] 1983 creates no independent, substantive constitutional rights but rather is a vehicle for enforcing such rights."  *Rosa R. v. Connelly*, 889 F.2d 435, 440 (2d Cir. 1989).  Plaintiffs may bring private causes of action under Section 1983 "against persons acting under color of state law to recover money damages for deprivations of their federal or constitutional rights."  *Sagy v. City of New*

*York*, No. 18-cv-1975, 2022 WL 6777602, at *2 (E.D.N.Y. Oct. 11, 2022).  To establish a

Section 1983 claim, a plaintiff must show that "a person acting under color of state law" violated

"a right secured by the Constitution and laws of the United States."  *Id*.

        *A.*     *Count Two: Negligence*

As an initial matter, Count Two of the Complaint fails as a matter of law because it is

grounded in negligence.  It is well settled that alleged constitutional violations brought under

Section 1983 require more than allegations of negligence.  *See Poe v. Leonard*, 282 F.3d 123,

145 (2d Cir. 2002) ("mere negligence is insufficient as a matter of law to state a claim under

section 1983"); *Hagans v. Maher*, No. 18-cv-1917, 2022 WL 4538561, at *7 (E.D.N.Y. Sept. 28,

2022) (holding allegations that defendants may have negligently performed their job

responsibilities as insufficient to state a claim under § 1983); *Miller v. Cnty. of Nassau*, No. 16-

cv-584, 2018 WL 1597401, at *3 (E.D.N.Y. Mar. 31, 2018) ("[A]ny § 1983 claim or a violation

of due process requires proof of a *mens rea* greater than mere negligence.").  Because Plaintiff is

alleging a violation under the Fourteenth Amendment against the County Defendants and

Defendant Armor under a theory of negligence, Count Two must be dismissed.  ECF No. 1 at 29

Plaintiff's argument that Count Two is not solely based on negligence is unavailing.  The

title of Count Two includes the word "negligence."  ECF No. 1 at 29 ("As and For a Second

Count: 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution -

Negligence").  Further, the plain text of the allegations underlying Count Two reference

negligence and the standard under which negligence is analyzed.  *See, e.g.*, ECF No. 1 ¶ 132

("DEFENDANTS ARMOR and NUMC, their agents and/or employees were negligent in the

care rendered for and on behalf [*sic*] MR. BARRERE in, among other things, negligently failing

and neglecting to use reasonable care in the services and care rendered for and on behalf of the

11

sick and injured MR. BARRERE . . . ."); ¶ 139 ("DEFENDANTS ARMOR and NUMC, their

agents and/or employees, and each of them, breached their duty of care by failing to render

proper medical treatment to MR. BARRERE."); ¶ 146 ("DEFENDANTS ARMOR and NUMC,

their agents and/or employees, negligently assessed the medical condition of MR. BARRERE in

accord with reasonable treatment of others similarly situated . . . .").

Consequently, Plaintiff's argument is "belie[d]" by the "plain text of his Complaint."

*Mayes v. United States*, No. 15-cv-7155, 2018 WL 1274029, at \*10 n.10 (S.D.N.Y. Mar. 5,

2018) (rejecting plaintiff's argument that Fifth or Eighth Amendment claims were not raised as

the plain text of his complaint raised those assertions), *aff'd*, 790 F. App'x 338 (2d Cir. 2020); *cf.*

*Diedhiou v. Republic of Senegal*, No. 20-cv-5685, 2023 WL 5747493, at \*12 (S.D.N.Y. Sept. 6,

2023) (finding defendant's argument to be "belied by the plain text of [plaintiff's] complaint").

If Plaintiff intended Count Two to go beyond its plain text, then the Complaint was—as Plaintiff

concedes—"in-artful[ly] pl[ed]."  ECF No. 92 at 5.  Accordingly, all Defendants are granted

summary judgment on Count Two.

> ### B.     Count One: Deprivation of Constitutional Rights

> #### i.     First Amendment Claim

Plaintiff alleges that his rights under the First Amendment were violated because he was

retaliated against for filing prison grievances.  ECF No. 1 ¶¶ 82, 88, 91.  To state a First

Amendment retaliation claim, Plaintiff must show that (1) the speech or conduct at issue was

protected by the First Amendment, (2) Defendants took adverse actions against Plaintiff, and

(3) there was a causal connection between the adverse action and the protected speech.  *Montero*

*v. City of Yonkers*, 890 F.3d 386, 394 (2d Cir. 2018).  Prisoner retaliation claims are analyzed

"with skepticism and particular care."  *Allah v. Perlman*, No. 16-cv-6596, 2017 WL 11685254, at *6 (W.D.N.Y. 2017).

Because the filing of prison grievances is a constitutionally protected activity, the first prong is satisfied.  *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019).  To determine whether the second prong—whether Defendants took adverse actions against Plaintiff—is satisfied, the Court must evaluate whether retaliatory conduct was taken that would deter a similarly situated individual from exercising his or her constitutional rights.  *Id.*  Plaintiff claims all Defendants took adverse actions including:  (i) the Officer Defendants physically assaulted Plaintiff after he filed prison grievances; (ii) Plaintiff was denied medical care as a result of his prison grievances; and (iii) Defendants facilitated the July 2016 attack of Plaintiff by other detainees to silence him. ECF No. 1 ¶¶ 82, 87–88, 91; ECF No. 92 at 8.  Because the County Defendants are not moving for summary judgment on the alleged physical assault claims, the Court reviews whether Plaintiff has sufficiently shown (a) that he was denied medical care as a result of his prison grievances in a way that would deter a similarly situated individual from filing a grievance or (b) if the evidence shows the attack by the other detainees was facilitated by Defendants in an effort to silence him.

The record is devoid of any evidence that Plaintiff was, in fact, denied medical care as a result of his grievances.  To the contrary, the evidence shows Plaintiff filed multiple grievances throughout his confinement, and those grievances were reviewed and organized based on the type of grievance.  Plaintiff was evaluated by a dentist, mental health professionals, doctors, and nurses based on the different grievances he filed.  *See, e.g.*, ECF No. 75 at 65, 76–96, 111–13; ECF No. 92-1 ¶¶ 43–44, 54, 56–58, 71, 74, 86–88, 90, 104, 106.  Even after multiple grievances were filed, when Plaintiff fainted at the prison, he was taken to NUMC, evaluated, and

prescribed medicine and a Zio patch for his symptoms. ECF No. 75 at 148–51, 153–55; ECF No. 92-1 ¶ 75, 77. His diet was modified and his request for a specialty service/consultation to see a cardiologist was approved. ECF No. 75 at 136; ECF No. 92-1 ¶ 85. The only sick call grievance that seems to have been acted upon in a manner contrary to Plaintiff's wishes was his request to return to general population when he was in the infirmary, and that request was denied because the medical staff wanted to continue to monitor Plaintiff. ECF No. 92-1 ¶¶ 89, 94; ECF No. 91-12 at 30. Indeed, it was Plaintiff who often disregarded the medical care provided to him as he failed to take his prescribed medications, refused treatment, and refused mental health sessions. ECF No. 75 at 139–47, 226; ECF No. 92-1 ¶¶ 47, 95–96, 101, 103, 105, 107–08, 110–14.

Similarly, there is no evidence in the record to suggest the third prong is satisfied—namely that there is a causal connection between Plaintiff's grievances and any potential retaliation. Regarding the July 2016 attack by the other inmates, the investigation into the altercation revealed that the altercation was a surprise attack. ECF No. 92-1 ¶ 138. There is no evidence linking any of the Defendants to facilitating the attack and conclusory allegations linking the surprise attack to Defendants—*see, e.g.*, ECF No. 1 ¶ 123 ("Based on information and belief, DEFENDANT CORRECTION OFFICERS orchestrated the beating of PLAINTIFF by said inmates in retaliation for the complaints/grievances PLAINTIFF filed. . . ."); ECF No. 92 at 10 ("a reasonable inference may be drawn that . . . allowing the assault by other detainees is causally connected to the Plaintiff[']s complaints")—are insufficient to defeat summary judgment. *See Barclay v. New York*, 602 F. App'x 7, 11 (2d Cir. 2015) (holding plaintiff "was not entitled to rely on his own conclusory allegations" on the causal connection prong in opposing summary judgment).

Consequently, because the Court cannot find that Plaintiff was denied medical care in retaliation for filing prison grievances, and cannot find that there was a causal connection between the surprise attack from other detainees and Plaintiff's grievances, summary judgment is granted to the County Defendants and Defendant Armor on Plaintiff's First Amendment claim. Plaintiff's First Amendment claim against the Officer Defendants survives as it relates to the allegations that they physically assaulted him.

ii.    Deliberate Indifference to Medical Needs

Plaintiff claims that the County Defendants and Defendant Armor were deliberately indifferent to his medical needs.  ECF No. 1 ¶¶ 81, 83, 91, 94, 120, 122–123.  To prove Defendants were deliberately indifferent to his medical needs, Plaintiff must show (1) that he had "serious medical need[s]," and (2) that Defendants "acted with deliberate indifference to such needs." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019).  The two-pronged test is the same whether it is brought under the Eighth or Fourteenth Amendment.  *Charles*, 925 F.3d at 85–86; *see also Spiezo v. Martinez*, 653 F. Supp. 3d 8, 25–26 (N.D.N.Y. 2023) (applying the same test to a Fourteenth Amendment claim).

Deliberate indifference can be shown "by something akin to recklessness, and does not require proof of a malicious or callous state of mind." *Spiezo*, 653 F. Supp. 3d at 25.  Plaintiff's claims regarding deliberate indifference when he was a pre-trial detainee are analyzed under the Fourteenth Amendment and Plaintiff's claims for when he was incarcerated in 2018 are analyzed under the Eighth Amendment.  *See Darby v. Greenman*, 14 F.4th 124, 128 (2d Cir. 2021); *see also Sanchez v. Nassau Cnty.*, 662 F. Supp. 3d 369, 405 (E.D.N.Y. 2023) (Due Process Clause of Fourteenth Amendment applies to pre-trial detainee instead of Cruel and Unusual Punishment Clause of Eighth Amendment "[b]ecause pretrial detainees have not been convicted of a crime,

[and therefore] they may not be punished in any manner—neither cruelly and unusually nor otherwise.") (citing *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017)).

a.   *Serious Medical Needs*

In determining whether medical needs are sufficiently serious, the Court must consider "factors such as whether a reasonable doctor or patient would find the injury important and worthy of treatment, whether the medical condition significantly affects an individual's daily activities, and whether the illness or injury inflicts chronic and substantial pain." *Charles,* 925 F.3d at 86.  The standard "contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Id.*

Plaintiff has shown that he had serious medical needs while he was incarcerated in both 2016 and 2018.  It is undisputed that Plaintiff filed multiple sick call grievances related to his heart condition, gastrointestinal issues, dental issues, and dietary concerns.  *See, e.g.*, ECF No. 92-1 ¶¶ 48, 49, 61, 65, 66, 84, 85, 100, 109, 152–154, 161, 163; ECF No. 93-3 ¶ 6; ECF No. 94-1 ¶ 6.  Some of these grievances were consistent and detailed Plaintiff's chronic and substantial pain.  *See id.*  Also while in custody, Plaintiff fainted, was taken to NUMC, and was separately involved in an altercation in 2016 that resulted in a serious head wound.  ECF No. 75 at 101, 148–51, 153–55; ECF No. 92-1 ¶¶ 75, 138; ECF No. 93-3 ¶ 22; ECF No. 94-1 ¶ 22.  Many of these medical concerns rise to the level of serious medical needs which required that Plaintiff receive medical care.

b.   *Deliberate Indifference*

With regard to the second prong of the test, "a detainee asserting a Fourteenth Amendment claim for deliberate indifference to his medical needs" must show "either that the defendants *knew* that failing to provide the complained of medical treatment would pose a

substantial risk to his health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Charles*, 925 F.3d at 87 (emphasis in original). For Plaintiff's Eighth Amendment claims, Plaintiff needs to show that Defendants "kn[ew] of and disregard[ed]" Plaintiff's medical needs. *Darby*, 14 F.4th at 128.

Plaintiff has failed to show, under either standard, that Defendants failed to administer medical treatment that would amount to deliberate indifference to his serious medical needs. First, as previously discussed, the medical unit reviewed Plaintiff's sick call grievances and administered medical care appropriate to his grievances. ECF No. 75 at 76–96, 111–13; ECF No. 92-1 ¶¶ 36, 43–44, 56–58, 86–88; ECF No. 93-3 ¶ 6; ECF No. 94-1 ¶ 6. Plaintiff saw a dentist, mental health staff, nurses, doctors, and a dietician related to each of his grievances. *See, e.g.*, ECF No. 75 at 66, 76–96, 111–13; ECF No. 92-1 ¶¶ 44, 54, 57, 71, 74, 86, 88, 90, 104, 106. Plaintiff was prescribed medicine and treatment, which he himself would sometimes refuse. ECF No. 75 at 139–47; ECF No. 92-1 ¶¶ 47, 95–96, 101, 103, 105, 107, 108, 110–14. Plaintiff was brought to NUMC when he fainted and treated for the head wound he received from the altercation in 2016. ECF No. 75 at 101, 148–51, 153–55; ECF No. 92-1 ¶¶ 75, 138. And the medical staff kept Plaintiff in the infirmary, even over Plaintiff's objection, because they believed Plaintiff needed to continue to be monitored. ECF No. 92-1 ¶¶ 89, 94; ECF No. 91-12 at 30.

Plaintiff takes issue with the way some of his medical needs were met. For example, he complains that his dietary needs were not adequately addressed as he was not consistently given Ensure or Boost as requested, and he was given cold cuts even though he was allergic to them. ECF No. 1 ¶¶ 95, 123; ECF No. 93-3 ¶¶ 10–12, 37–38; ECF No. 94-1 ¶¶ 10–12, 37–38. First, it

was not clear until 2018 that Plaintiff may have even had an allergy to cold cuts as the prior

medical records indicated only an allergy to NSAIDS.  ECF No. 75 at 150, 178; ECF No. 92-9 at

2.  Indeed, during his incarceration in 2016, Plaintiff filed a grievance that he had not received a

turkey sandwich as ordered by the doctor.  ECF No. 75 at 200.  Even in 2018, the records

regarding Plaintiff's allergy were inconsistent as one record noted Plaintiff did not like cold cuts,

and the other noted he had an allergy to cold cuts.  *Compare* ECF No. 75 at 230 *with* ECF No. 75

at 229.  With regard to Ensure and Boost, the records show Plaintiff's diet was changed to a high

protein diet.  ECF No. 75 at 213, 221.  Although it is clear Plaintiff disagreed with the

modifications in his diet, "mere disagreement over the proper treatment" does not amount to

inadequate medical care.  *Leggett v. Oneida Cnty. Corr. Facility*, No. 21-3033-cv, 2022 WL

10763530, at *2 (2d Cir. Oct. 19, 2022) (applying standard to Eighth Amendment claims); *Gee v.

N.Y.C. Health & Hosps. Corp.*, No. 19-cv-03622, 2020 WL 3618454, at *4 (S.D.N.Y. July 2,

2020) (applying standard for Fourteenth Amendment claims).

  As another example, Plaintiff claims he was kept in his cell for too long after the surprise

attack from the other inmates.  ECF No. 1 ¶ 122.  It is undisputed that Plaintiff remained in his

cell for approximately thirty minutes after the altercation.  ECF No. 93-3 ¶ 22; ECF No. 94-1

¶ 22.  However, Plaintiff was still seen on the same day and was treated with staples for his head

wound.  ECF No. 75 at 101; ECF No. 92-1 ¶ 138.  There is no allegation that the thirty-minute

lapse in time made Plaintiff's wounds worse.  Consequently, Plaintiff's claim of deliberate

indifference fails.  *See Chambers v. Toulon*, No. 22-cv-5463, 2022 WL 11729696, at *1, *4

(E.D.N.Y. Oct. 20, 2022) (holding no constitutional deprivation where there was thirty-minute

delay in receiving medical treatment after plaintiff was stabbed in the head by another inmate);

*see also Bradshaw v. City of New York*, 855 F. App'x 6, 10 (2d Cir. 2021) (affirming dismissal

of deliberate indifference claim where medical professionals treated plaintiff for his injuries on the day he sustained them).

Accordingly, Defendants are granted summary judgment on Plaintiff's deliberate indifference claim.

iii.   Failure to Protect

Plaintiff asserts that the County Defendants and Defendant Armor failed to protect him from the surprise attack by other detainees in 2016.  ECF No. 1 ¶¶ 81, 88–93, 99, 101, 119, 120. Because Plaintiff was a pre-trial detainee when this attack occurred, the Court analyzes the failure to protect claim under the Fourteenth Amendment.  *See Sanchez*, 662 F. Supp. 3d at 405. To sustain this claim, Plaintiff must satisfy both an objective prong and subjective prong.  *See id.* The objective prong requires that Plaintiff show "the challenged conditions were sufficiently serious to constitute objective deprivations of due process."  *Id.* at 406.  To satisfy the subjective prong, Plaintiff must show that Defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Id.* at 406 (citing *Darnell*, 849 F.3d at 35).

There is no evidence in the record that any of the Defendants "facilitated the attack," *see* ECF No. 92 at 12, or had reason to know any attack upon Plaintiff would occur.  The evidence cited by Plaintiff in support of his claim includes deposition testimony that Corporal Curatolo knew that gang members of the Bloods would attack other detainees.  ECF No. 92-15 at 100–04 (Curatolo Dep. Tr.).  While Corporal Curatolo speculated that a detainee with a disability could make one a "weaker target," he explained that the detainees affiliated with the Bloods would

"target everybody." *Id.* at 104:21–25.[7]  Additional evidence cited by Plaintiff includes a post-incident report, which states the belief that Plaintiff may have been targeted "due to the amount of commissary he had and his disability."  ECF No. 92-10 (Gang Related Incident Report).

None of this evidence comes close to showing that the County Defendants or Defendant Armor should have known, or were otherwise aware, that Plaintiff was a target of any attack *before* the incident occurred.  To the contrary, even Plaintiff admits that the attack was a surprise.  ECF No. 92-1 ¶ 138.  Because "the standard is not satisfied when the surprise attack was a surprise to everyone involved, including [P]lantiff," the Court cannot find that Defendants should have known an attack would occur.  *Walker v. George*, No. 21-cv-6070, 2022 WL 2290634, at *6 (S.D.N.Y. June 24, 2022) (finding plaintiff failed to allege defendants recklessly failed to act with reasonable care where the attack was a surprise).  Summary judgment is therefore granted in favor of Defendants on the failure to protect claim.

### iv.  Conditions of Confinement

Plaintiff generally alleges that he was subject to unconstitutional conditions of confinement while he was detained.  ECF No. 1 ¶¶ 113–14, 127.  Similar to some of Plaintiff's other Section 1983 claims, this allegation is subject to the Fourteenth and Eighth Amendments because of Plaintiff's different status during each period of confinement.  The allegation requires Plaintiff to satisfy a two-pronged test:  (1) that Plaintiff suffered an objectively constitutional deprivation and (2) that Defendants acted with a "sufficiently culpable state of mind."  *Tutora v. Aramark Corr. Servs.*, No. 17-cv-9170, 2022 WL 2237567, at *8 (S.D.N.Y. June 22, 2022).  Under both the Eighth and Fourteenth Amendments, to satisfy the first, objective prong, Plaintiff

---

[7]      Indeed, the question that elicited this answer contained the following caveat from Plaintiff's counsel:  "I'm not saying you knew this was happening to Mr. Barrere."  *Id.* at 104:14–18.

must show that the conditions pose an unreasonable risk of serious damage to his health.  *Id.*
The conditions themselves are evaluated "in the light of contemporary standards of decency."
*Id.*  The second prong is applied slightly differently under the Fourteenth and Eighth
Amendments.  *Id.* at *9.  "Under the Eighth Amendment, [] [P]laintiff must demonstrate that the
defendant-prison official acted with deliberate indifference, which requires more than mere
negligence."  *Id.*  Under the Fourteenth Amendment, Plaintiff "must prove that the defendant-
official acted intentionally to impose the alleged condition, or recklessly failed to act with
reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though
the defendant-official knew, or should have known, that the condition posed an excessive risk to
health or safety."  *Id.*

Plaintiff alleges in his Complaint that he was locked in his cell for days without reason on
at least 10 occasions.  ECF No. 1 ¶¶ 84, 113–14.  However, the evidence indicates that Plaintiff
was only subject to keep-lock on two occasions, both of which occurred during his 2016
confinement.  ECF No. 75 at 2; ECF No. 92-1 ¶¶ 14, 19, 23; ECF No. 91-9 at 67:10–24.

Plaintiff additionally alleges that, during his 2018 incarceration, he was locked in two
cells:  one which had an overflowing toilet, and another which had no access to water.  ECF No.
92 at 15.  The Complaint alleges he endured these conditions for approximately seven days.
ECF No. 1 ¶ 127.  However, when asked about this in his deposition, Plaintiff recalled a toilet
overflowing in someone else's cell and complaining about it to officers, but he could not recall
with which officers he discussed his complaint.  ECF No. 92-3 at 188:20–192:21.  The Nassau
County Sherriff's Department's records reveal that Plaintiff was moved to a different cell on
February 7, 2018, after being admitted on February 1, 2018.  ECF No. 75 at 7.  The reason
indicated for the move was "maintenance."  *Id.*

21

Plaintiff's allegations that he suffered constitutional deprivations and that that Defendants acted with a sufficiently culpable mind are conclusory at best, and are not supported by the evidence.  Regarding the allegation that Plaintiff was unnecessarily locked in his cell while he was a pre-trial detainee in 2016, the evidence shows—and Plaintiff does not dispute—that Plaintiff was subject to "keep lock" only on two occasions.  ECF No. 75 at 2; ECF No. 92-1 ¶ 14.  In both instances he was segregated from the general population as a result of different altercations with other detainees.  ECF No. 92-1 ¶¶ 23, 141; ECF No. 91-9 at 67:10–24.  Plaintiff cites to his deposition testimony and the Complaint to support that he was locked in his cell on other occasions.  ECF No. 93-3 ¶ 15; ECF No. 94-1 ¶ 15.  At his deposition, Plaintiff could not recall the dates of the other alleged instances that he was unnecessarily locked in his cell.  ECF No. 92-3 at 151:3–153:22.  This self-serving, ambiguous testimony fails to raise a triable issue of fact when it conflicts with the documentary evidence.  *See Boyd v. Petralis*, 528 F. Supp. 3d 112, 120 (W.D.N.Y. 2021) ("Plaintiff's testimony . . . does not create a genuine issue of fact in view of the documentary evidence . . . ."); *BanxCorp v. Costco Wholesale Corp.*, 978 F. Supp. 2d 280, 299 (S.D.N.Y. 2013) ("a self-serving, contradictory affidavit fails to raise a triable issue of fact when it conflicts with documentary evidence").

With respect to the conditions Plaintiff claims he endured during his 2018 incarceration, again, the only evidence in the record describing these conditions is the Complaint and Plaintiff's own testimony, and, as discussed above, that evidence is contradictory.  ECF No. 93-3 ¶ 45–46; ECF No. 94-1 ¶ 45–46.  Even if the Court were to find that these conditions did exist, Plaintiff has put forth no evidence that Defendants knew of and disregarded these conditions.  *Tutora*, 2022 WL 2237567, *9 (holding plaintiff must demonstrate that prison official knew of and disregarded an excessive risk to an inmate's health or safety for an Eighth Amendment violation

claim to survive).  Because Plaintiff could not recall whom he spoke with regarding the alleged

conditions, *see* ECF No. 92-3 at 188:20–192:21, the Court cannot find that any prison official

"knew of and disregarded" the conditions.  Furthermore, the documentary evidence shows that

Plaintiff was moved to a different cell shortly after his intake, *see* ECF No. 75 at 7, which

undermines any claim that the alleged conditions were disregarded.

Without more, the Court cannot find that there is a genuine dispute of material fact

regarding whether the Defendants were "deliberately indifferent" to the alleged conditions

described by Plaintiff.  Defendants are therefore granted summary judgment on the conditions of

confinement claim.[8]

## II.    *Monell* Liability

Plaintiff also brings a claim for *Monell* liability against Defendant Nassau County.  ECF

No. 1 at 34–45.  "To succeed on a *Monell* claim, [P]laintiff[] must demonstrate that a policy or

custom of the [County] caused a deprivation of [his] federal or constitutional rights."  *Nixon v.*

*City of New York*, 668 F. Supp. 3d 143, 152 (E.D.N.Y. 2023); *see also Monell v. Dep't of Soc.*

*Servs.*, 436 U.S. 658, 690–91 (1978) (holding that a local government can only be sued under

Section 1983 when execution of a government's policy or custom causes injury).  The elements

of a *Monell* claim are (1) a municipal policy or custom that (2) causes the plaintiff to be

---

[8]      Because the Court finds there was no evidence to support any constitutional deprivations
as alleged by Plaintiff, it need not reach the issue of qualified immunity as it pertains to Corporal
Curatolo's alleged actions.  *See, e.g.*, *Creighton v. City of New York*, No. 12-cv 7454, 2017 WL
636415, at *48 n.49 (S.D.N.Y. Feb. 14, 2017) ("Because Plaintiff has not demonstrated that he
suffered any constitutional deprivation, this Court does not reach Defendants' arguments that
they are entitled to absolute or qualified immunity."); *Yap v. Oceanside Union Free Sch. Dist.*,
303 F. Supp. 2d 284, 298 (E.D.N.Y. 2004) ("Since, as discussed *supra,* the Court concludes that
no reasonable trier of fact could conclude that constitutional deprivations occurred, the Court
does not reach the qualified immunity analysis.").

subjected to (3) the deprivation of a constitutional right.  *Agosto v. N.Y.C. Dep't of Educ.*, 982

F.3d 86, 97 (2d Cir. 2020).

"It is well-settled that a *Monell* claim cannot succeed without an underlying constitutional

violation."  *Mastromonaco v. Cnty. of Westchester*, 779 F. App'x 49, 51 (2d Cir. 2019); *see also*

*Oquendo v. City of New York*, 492 F. Supp. 3d 20, 32 (E.D.N.Y. 2020) (quoting *Mastromonaco*,

779 F. App'x at 51); *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (finding that a

district court does not need to address *Monell* liability if it finds no underlying constitutional

violation).  Applying this standard, the Court need not consider Plaintiff's *Monell* claims on the

merits as they relate to allegations other than the allegations predicated on the alleged physical

assaults.  Because the Court concluded, *see supra* Section I, that Plaintiff's Section 1983 claims,

other than the alleged physical assault claims, fail, it follows that there can be no municipal

liability with respect to those claims.  *Grytsyk v. Morales*, 527 F. Supp. 3d 639, 658 (S.D.N.Y.

2021) ("Because the Court concluded above that [plaintiff's Section 1983] claims fail, it follows

that there can be no municipal liability with respect to these claims.).

Defendant Nassau County argues that although the Court is not evaluating Plaintiff's

allegations regarding the alleged physical assaults from the Officer Defendants, the Court can

still grant summary judgment in favor of Defendant Nassau County on the entirety of Plaintiff's

*Monell* claims.  ECF No. 91-14 at 28–29.  The Court agrees.

"[M]unicipalities may not be held liable unless action pursuant to *official municipal*

*policy* of some nature caused a constitutional tort."  *Friend v. Gasparino*, 61 F.4th 77, 93 (2d Cir.

2023) (emphasis in original).  "Official municipal policy includes the decisions of a

government's lawmakers, the acts of its policymaking officials, and practices so persistent and

widespread as to practically have the force of law."  *Id.*

Plaintiff alleges Defendant Nassau County "permitted and tolerated a pattern and practice of unjustified, unreasonable, and illegal uses of force and beatings against detainees," "failed to maintain a proper system of investigation of all incidents of . . . excessive force," "failed to respond to the continuing and urgent need to prevent, restrain and discipline police officers who wrongfully . . . use excessive force," and "fail[ed] to train or supervise properly" the actions of corrections officers.  ECF No. 1 ¶¶ 157–59, 161.  However, in opposition to Defendants' Motion for Summary Judgment, Plaintiff puts forth no facts, testimony, or affidavits that show there was a practice that was "so persistent and widespread" that was endorsed by the County to warrant municipal liability for the excessive force allegations.  *Gasparino*, 61 F.4th at 93.  Plaintiff has also not put forth any evidence showing that any other inmate was subjected to the alleged unconstitutional harms he suffered.  *See Nguedi v. Caulfield*, 813 F. App'x 1, 3 (2d Cir. 2020) ("While [plaintiff] points to his own treatment as evidence of a custom, a single case is insufficient to establish the existence of such a practice."); *Forrest v. Cnty. of Greene*, No. 22-cv-276, 2023 WL 3864962, at *4 (N.D.N.Y. June 7, 2023) ("It is not sufficient to merely plead that the isolated incidents of the present case imply the existence of a *de facto* policy.").  The Court finds that these allegations, without additional evidentiary or factual support, are insufficient to establish that the County has an official policy of permitting and tolerating a practice of excessive force.  *Chambers v. Cnty. of Nassau*, No. 19-cv-158, 2020 WL 1866586, at *5 (E.D.N.Y. Jan. 28, 2020) ("These allegations are nothing more than a formulaic recitation of the elements of a *Monell* claim, without any factual support to substantiate them."), *report and recommendation adopted*, 2020 WL 813109 (E.D.N.Y. Feb. 19, 2020).

Plaintiff has failed to allege any underlying constitutional violation or raise any genuine issue of material fact which would permit the Court to infer that the alleged physical assaults on

Plaintiff were connected to any underlying municipal policy.  Accordingly, the Court grants summary judgment in favor of Defendant Nassau County on all of Plaintiff's *Monell* claims.

### III.    John and Jane Doe Defendants

Plaintiff also proceeds against "JOHN AND JANE DOES 1-10, *et al*."  *See generally* ECF No. 1.  Defendants John and Jane Does 1-10 have not appeared in this action since Plaintiff filed his case on June 19, 2018.  Discovery in this case closed on September 29, 2022.  *See* September 29, 2022, Text Order.  The Court finds that Plaintiff has had sufficient time and opportunity to identify John and Jane Does 1-10 and therefore the Court dismisses all claims against them.  *See Young v. Cabrera*, No. 18-cv-3028, 2020 WL 7042759, at *8 (E.D.N.Y. Nov. 30, 2020) ("[I]t is well settled that where discovery has closed, the proper course is to dismiss the John Doe [d]efendants without prejudice."); *Tortora v. City of New York*, No. 15-cv-3717, 2019 WL 9100369, at *25 (E.D.N.Y. Mar. 30, 2019) (dismissing claims against John and Jane Doe defendants at summary judgment stage where plaintiff had not identified the defendants in the three years since the action was commenced); *see also Constant v. Prack*, No. 16-cv-03985, 2022 WL 917528, at *1 n.2 (S.D.N.Y. Mar. 29, 2022) (dismissing John and Jane Doe Defendants for failure to prosecute after Plaintiff failed to identify them before the close of discovery).

*     *     *

For the sake of clarity, and to assist the parties as they prepare for trial, the Court provides a summary of its decision as set forth in more detail herein.  The Court grants the County Defendants' and Defendant Armor's motions for summary judgment in full.  The only claims that survive for trial are the claims predicated on the alleged physical assaults by Correction Officer Manganaro and Corporal Curatolo.  As the Court understands the Complaint

and Plaintiff's Opposition, *see* ECF Nos. 1, 92, those claims relate solely to Plaintiff's Section

1983 claim that his First Amendment rights were violated as a result of the alleged assaults.

Consequently, the case proceeds only on Plaintiff's allegations that the alleged physical assaults

by the Officer Defendants were carried out in retaliation for the filing of prison grievances.  ECF

No. 92 at 9.

## **CONCLUSION**

For the reasons set forth above, the Court GRANTS the County Defendants' and

Defendant Armor's motions for summary judgment.  All claims, except the claims regarding the

alleged physical assaults by Correction Officer Manganaro and Corporal Curatolo, are

DISMISSED.  The Clerk of Court is respectfully directed to terminate all Defendants except

Defendant Correction Officer Manganaro (improperly named as Manganara) and Defendant

Corporal Curatolo (improperly named as Cortolo).[9]

---

[9]    Because the Court is dismissing all claims against the County Defendants and Defendant Armor, it need not address the parties' arguments on punitive damages with respect to those Defendants.  ECF No. 91-14 at 33–34; ECF No. 92 at 24–25; ECF 94 at 9–12.  The Court does find, however, that the plain text of the Complaint seeks punitive damages only against "the Individual Defendants," and only C.O. Manganaro and Corporal Curatolo were sued in their individual capacities, *see* ECF No. 1 at 1, 53.  Regardless, Plaintiff's claim for punitive damages against Officer Defendants survive.

If the remaining parties intend to seek referral to the Court-annexed mediation program or engage in a settlement conference before Magistrate Judge Scanlon, they shall notify the Court via joint letter on or before April 1, 2024.  Regardless, the parties shall submit their joint pre-trial order in accordance with Section VI.B of the Court's Individual Practices on or before April 8, 2024.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
March 24, 2024